**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4427**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OSCAR AARON WATKINS, a/k/a Eric Oscar Watkins,

Defendant - Appellant.

**No. 19-4473**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DOUGLAS CHARLES KNICELY,

Defendant - Appellant.

**No. 19-4521**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY WILLIE TRAPP,

Defendant - Appellant.

———————————

Appeals from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, District Judge.  (1:18-cr-00054-TSK-MJA-2; 1:18-cr-00054-TSK-MJA-3; 1:18-cr-00054-TSK-MJA-1)

———————————

Argued:  May 18, 2020                                        Decided:  June 17, 2020

———————————

Before THACKER and RICHARDSON, Circuit Judges, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:**  Elizabeth Belch Gross, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia; Belinda A. Haynie, Morgantown, West Virginia, for Appellants.  Zelda Elizabeth Wesley, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.  **ON BRIEF:**  L. Richard Walker, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant Douglas Knicely.  Scott C. Brown, Wheeling, West Virginia, for Appellant Terry Trapp.  William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Oscar Watkins, Douglas Knicely, and Terry Trapp (collectively, "Appellants") appeal the district court's denial of their motions to suppress physical evidence seized during a search of Knicely's truck and a subsequent search of a hotel room occupied by Watkins and Trapp. Appellants argue that Watkins and Knicely were unlawfully seized prior to the search of Knicely's truck such that the evidence should be suppressed. And because the search of the truck provided the basis for the search warrant authorizing the search of the hotel room, Appellants argue that evidence should be suppressed as fruit of the poisonous tree.

For the reasons set forth in detail below, we hold that Watkins and Knicely were not unlawfully seized prior to the search of the truck. And because there was no initial unlawful search or seizure, the hotel room search was also not unlawful. Thus, we affirm the district court's denial of Appellants' motions to suppress.

I.

On October 19, 2018, Officer Zane Breakiron with the Morgantown Police Department was on an overnight patrol in Morgantown, West Virginia. Officer Breakiron was assigned to "Zone 10" which includes the Euro-Suites Hotel. J.A. 115–17.[1] Around 1:30 a.m., Officer Breakiron conducted a self-initiated "security check"[2] of the Euro-Suites

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] Officer Breakiron described "security checks" as self-initiated patrols, as opposed to a "call for service" or "area patrol" where police are dispatched to a location by 911. *Id.* at 119–20.

3

parking lot. *See id.* at 117. Officer Breakiron routinely conducted security checks of the hotel's parking lot at the request of hotel employees and as a result of prior criminal activity at the hotel. Specifically, Officer Breakiron reported that hotel employees had reported finding needles in the hotel parking lot and believed the parking lot was being used for drug deals. Further, Officer Breakiron reported that there had been numerous calls for service to the hotel parking lot for various crimes, including a robbery, prostitution, and drug activity.

While conducting his security check, Officer Breakiron observed a truck parked in the rear parking lot of the hotel. The truck's rear brake lights were on and a person, later determined to be Knicely, was sitting in the driver's seat. Officer Breakiron then observed another individual, later determined to be Watkins, walk from the hotel and sit in the front passenger seat of the truck. Officer Breakiron parked in a nearby parking lot, turned off his headlights, and observed the truck for a few minutes. During that time, Officer Breakiron observed the truck's interior light go on and off multiple times. Because he suspected the individuals in the truck may be using drugs, Officer Breakiron decided to further investigate.

Officer Breakiron drove his "fully marked" police cruiser into the hotel parking lot and stopped in the driving lane approximately three parking spaces back from the truck. J.A. 124–25. He did not turn his emergency lights on but did leave his headlights running. Officer Breakiron exited his vehicle and began walking toward the truck. As he approached, Officer Breakiron immediately smelled the odor of marijuana coming from the truck. Once he reached the truck, Officer Breakiron identified himself as an officer and

4

asked the occupants for identification. He identified the two occupants as Watkins and Knicely. Because he smelled marijuana, Officer Breakiron requested a K-9 officer respond to the scene. Shortly thereafter, Officer Helms, the K-9 officer, arrived. Additionally, First Sergeant Jason Ammons heard the radio call and responded. Both arriving officers parked their police cruisers in the driving lane of the hotel parking lot next to Officer Breakiron's cruiser.

Officer Breakiron then asked Watkins and Knicely to step out of the truck and patted them down for weapons. After the K-9 gave a positive response for the presence of illegal drugs, the officers conducted a full search of the truck and read Watkins and Knicely their *Miranda*[3] rights. As a result of the vehicle search, the officers recovered methamphetamine, Xanax, crack cocaine, marijuana, a grinder, a white powder substance, and cell phones. Watkins and Knicely were arrested and searched. In the search, the officers found a hotel key and over $7,000 on Watkins and just over $200 on Knicely.

After determining that Watkins had rented a room at the hotel, Officer Breakiron contacted officers with the drug task force who obtained a search warrant for the hotel room based on the information provided by Officer Breakiron as to the results of the search of the truck. When officers executed the search warrant for the hotel room later that night, they found Trapp in the room. The search yielded more methamphetamine, cocaine base, heroine, a scale, cash, and four firearms. Trapp was also arrested.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellants were charged and indicted on numerous counts, including conspiracy to distribute controlled substances, possession with intent to distribute, aiding and abetting possession with intent to distribute, and unlawful possession of firearms. Appellants moved to suppress the physical evidence seized as a result of the searches of the truck and hotel room, arguing they were unlawful because Officer Breakiron lacked reasonable suspicion when he initially seized Watkins and Knicely. A magistrate judge issued a Report and Recommendation recommending the motions to suppress be granted. The Government objected, and the district court issued an order rejecting the Report and Recommendation and denying the motions to suppress. At that point, Appellants entered into guilty pleas but reserved the right to appeal the denial of their motions to suppress. Appellants timely appealed.

## II.

When evaluating the denial of a motion to suppress, we review legal issues de novo and factual findings for clear error. *See United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). "In doing so, we must construe the evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." *Id.* at 114–15 (internal quotation marks omitted).

## III.

Appellants raise two issues on appeal. First, they argue Watkins and Knicely were unlawfully seized prior to Officer Breakiron's search of the truck, such that the evidence from the search should be suppressed. Second, they argue that if the search of the truck

was unlawful, the subsequent search of the hotel room was as well, and the hotel room evidence should likewise be suppressed as fruit of the poisonous tree.

A.

1.

"The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018) (quoting U.S. Const. amend. IV). "A [Fourth Amendment] seizure of the person . . . occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (internal quotation marks omitted) (citations omitted).

Generally, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). And, of particular note, we have held that police officers may approach individuals in parked cars and question them without implicating the Fourth Amendment. *See United States v. Lewis*, 606 F.3d 193, 197–98 (4th Cir. 2010). "But, an officer's authority to initiate an encounter with a citizen rather than detain him is no greater than[] the authority of an ordinary citizen to approach another on the street and ask questions." *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (internal quotation marks omitted). "Police-citizen encounters that are consensual require

7

no justification, but those that are not consensual impose a detention on a citizen and so must be supported by an officer's reasonable, articulable suspicion." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

A police-citizen encounter becomes a seizure "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n.16. In determining whether a police-citizen encounter constitutes a seizure, courts should consider various factors, including but not limited to:

> (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they touched the defendant or made any attempt to physically block his departure or restrain his movement; (v) the use of language or tone of voice indicating that compliance with the officer's request might be compelled; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as routine in nature; and (vii) whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it.

*United States v. Black*, 707 F.3d 531, 537–38 (4th Cir. 2013) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)) (internal quotation marks omitted). Importantly, with respect to the fourth factor, we have held that when an officer has used his cruiser to physically block a suspect's vehicle from leaving, the suspect is seized. *See e.g.*, *Jones*, 678 F.3d at 300–01; *see also United States v. Stover*, 808 F.3d 991, 997 (4th Cir. 2015).

Using these factors, we must determine *when* in the encounter "a reasonable person would have believed that he was not free to leave." *Black*, 707 F.3d at 537 (citation omitted). It is at that point that an individual is seized.

2.

The critical issue in this case is whether Watkins and Knicely were seized when Officer Breakiron pulled his police cruiser into the hotel parking lot and walked toward the truck. The district court made a factual finding, which Appellants do not challenge on appeal, that Officer Breakiron smelled marijuana as he initially approached the truck. Once he smelled the marijuana, the district court correctly held Officer Breakiron had probable cause to search the truck. *See United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002); *see also United States v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010). Therefore, the relevant question here is whether Watkins and Knicely were actually seized prior to Officer Breakiron smelling marijuana as he reached the truck, and if so, whether that seizure was supported by reasonable suspicion.

3.

Appellants argue the seizure occurred immediately upon Officer Breakiron parking in the parking lot and beginning his approach to the truck. In their view, Watkins and Knicely were seized at that point because Officer Breakiron parked his police cruiser behind the truck in a way that effectively made it extremely difficult or impossible for them to maneuver the truck around the police cruiser. Though our analysis "tak[es] into account all of the circumstances surrounding the encounter," *Kaupp v. Texas*, 538 U.S. 626, 629 (2003), this principle must be limited in time when we are trying to discern precisely *when* the seizure occurred. Thus, in evaluating the factors we established in *Black*, we consider only the circumstances surrounding the encounter up to the point where Officer Breakiron reached the truck and smelled marijuana.

9

As to the first *Black* factor, there was only one officer present at the scene at the relevant time -- Officer Breakiron. As to the second and third factors, Officer Breakiron was in uniform and, as such, carried his service weapon. However, there is no evidence, nor do Appellants allege, that Officer Breakiron drew his weapon or even held his hand on his holster as he parked and approached the truck. As to the fourth factor, Officer Breakiron did not touch Watkins or Knicely as he parked his cruiser and approached the truck. However, Appellants argue Officer Breakiron did use his police cruiser to block the truck, thereby seizing Watkins and Knicely. Because this factor is the most heavily debated, we analyze it separately below. As to the fifth factor, Officer Breakiron had not used any aggressive language or tone of voice before he arrived at the truck and smelled the marijuana. And, we know from his body camera footage that even when Officer Breakiron did speak to Watkins and Knicely, he did not use any threatening tone or language. As to the sixth factor, Officer Breakiron had not informed the pair that he suspected them of illegal activity at the time he was approaching the truck because, again, he had not yet made contact with them. And finally, as to the seventh factor, Officer Breakiron had not requested identification from Watkins and Knicely at the time he was approaching the vehicle. Though he did request identification once he reached the truck and spoke with them, by that point Officer Breakiron had already smelled marijuana. Thus, with the possible exception of the fourth factor, discussed below, the *Black* factors indicate that this was nothing more than a routine encounter with a uniformed officer. However, pursuant to the fourth factor, Appellants argue that Officer Breakiron still seized Watkins and

10

Knicely when he pulled into the parking lot because he physically blocked their departure by parking his vehicle behind them.

i.

We have had few occasions to determine whether an officer using his cruiser to block a suspect from leaving is a seizure. First, in *United States v. Jones*, two police officers in a marked police cruiser closely followed the defendant's vehicle on a public road because the vehicle had an out of state license plate and was in a high crime area. 678 F.3d 293, 296 (4th Cir. 2012). The police officers followed the vehicle onto a private, one-way road leading to an apartment building. *See id.* at 296–97. There was only one row of parking spaces, which meant that for a vehicle to leave, it had to back out of a spot and continue following the road in the same direction it had entered. *See id.* at 297. When the defendant parked his vehicle in one of these spots, the officers stopped behind it, blocking the traffic lane. *See id.* One officer testified he parked the police cruiser in that manner specifically because it prevented the vehicle from leaving the driveway. *See id.* We held, "[W]hen an officer blocks a defendant's car from leaving the scene, particularly when, as here, the officer has followed the car, the officer demonstrates a greater show of authority" than during a routine stop or consensual encounter. *Id.* at 302. Accordingly, we held that the stop was a seizure without reasonable suspicion in violation of the Fourth Amendment.[4] *See id.* at 305.

_____

[4] Though not relevant in this case, in *Jones*, we also considered the officers' verbal interactions with the defendant. 678 F.3d 293, 305 (4th Cir. 2012). Immediately upon stopping the police cruiser, the officers quickly approached the vehicle and asked an occupant to lift his shirt and consent to a pat down search for weapons. *See id.*

11

Similarly, in *United States v. Stover*, officers observed a man and woman sitting in a truck that was double parked in the private parking lot of an apartment building around 1:00 a.m. 808 F.3d 991, 993 (4th Cir. 2015). The officers conceded that it was not suspicious to see the pair sitting in the vehicle at first, but when officers passed back by a few minutes later and saw the vehicle still occupied, they decided to investigate further. *See id.* The officers made the decision to pull into the parking lot after noticing that the truck had an out of state license plate and was in a high crime area. *See id.* We explained that the officers "pulled the marked police vehicle into the lot and parked at a 45-degree angle about three feet behind the [truck], blocking it in." *Id.* The officers turned on their emergency lights to alert the occupants of their presence and used the spotlight on the cruiser to illuminate the driver's side of the truck. *See id.* When the driver of the truck opened his door and tried to walk away, the officers told him to get back in the vehicle. *See id.* The driver, who never acknowledged the officers, walked to the front of the truck and tossed a gun into the grass in front of the truck. *See id.* At that point, one of the officers had caught up to the driver and confronted him. *See id.* That officer had his weapon drawn and ordered the driver back into the truck. *See id.* The district court denied the driver's motion to suppress the gun he tossed at the scene. *See id.*

On appeal, the driver argued he had been seized the minute the officers parked behind him without reasonable suspicion. *See Stover*, 808 F.3d at 994–95. After considering *Jones*, we held that no reasonable person would have felt free to leave, given

that the officers blocked the driver's vehicle, turned on their emergency lights and the spotlight, and eventually drew their weapons. *See id.*[5]

ii.

Though Appellants do not cite *Stover*, they argue this case is "strikingly similar" to *Jones*. Appellants' Br. 19. They argue Officer Breakiron's police cruiser "served as a formidable blockade between [Knicely's] truck and the only way out. Since there were many other cars in the parking lot, *see* J.A. 123, there was limited space for [the] truck to maneuver," Appellants' Br. 15. But this is wholly unsupported by the record, which includes body camera video from Officer Breakiron. The body camera video provides several vantage points as to where Officer Breakiron's police cruiser was parked in relation to Knicely's truck. Though there are no specific measurements included in the record, it is readily apparent on the video that Officer Breakiron's cruiser was parked on the other side of the driving lane in the parking lot, three parking spaces away from the truck. Because of the setup of the hotel parking lot, in order to get out, Knicely would have had to back up, turning the rear of the truck away from the police cruiser. In other words, the cruiser was not even in the direction that would stop the truck from being able to get out of the parking spot. Then, to exit the parking lot, Knicely would have had to drive his truck past the parked police cruiser. And when the two additional cruisers responded after

---

[5] However, because the driver did not actually submit to the officers' authority until after he had thrown the gun, we ultimately held that he had not been seized at that point pursuant to *Brendlin v. California*, 551 U.S. 249, 254 (2007). *See Stover*, 808 F.3d 991, 1000–01 (4th Cir. 2015). Accordingly, we affirmed the district court's denial of the motion to suppress. *See id.*

13

Officer Breakiron made his initial encounter with Watkins and Knicely, the video also shows that those vehicles were both able to fit in the lane beside Officer Breakiron. In other words, before those cruisers arrived, and before Officer Breakiron smelled marijuana, there was more than enough room for Knicely to simply drive past Officer Breakiron's cruiser to exit. Not only would it have been possible, there would have been no special maneuvering required.

The district court came to this same conclusion and specifically found that Watkins and Knicely "had a clear path to back out of their parking spot and drive away." J.A. 500. Importantly, we review factual findings for clear error, and we must view the facts in the light most favorable to the Government as the prevailing party below. *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). Based on the record, the district court's finding was not clearly erroneous, and we will not to disturb it. Therefore, we also reject Appellants' argument that Officer Breakiron seized Watkins and Knicely pursuant to the fourth *Black* factor by blocking their exit.

4.

Accordingly, we hold that Watkins and Knicely were not seized when Officer Breakiron pulled into the parking lot and approached their truck. Officer Breakiron did not block their exit from the parking lot, and the rest of his actions were consistent with a routine encounter. Thus, a reasonable person would have felt free to leave when Officer Breakiron pulled into the parking lot and began approaching the vehicle. By the time he reached the truck, Officer Breakiron smelled marijuana, giving him probable cause to

14

detain the occupants and search the vehicle. We therefore affirm the district court's denial of Appellants' motion to suppress the evidence recovered from the truck.

B.

For their second issue on appeal, Appellants argue that because, in their view, the initial seizure and search of the truck were unlawful, the subsequent search of the hotel room was also unlawful, and the evidence found should be suppressed as fruit of the poisonous tree. However, because we hold Watkins and Knicely were not unlawfully seized, this argument necessarily fails. Indeed, Appellants conceded this point at oral argument. *See* Oral Argument at 16:46–17:15, *United States v. Watkins*, No. 19-4427 (4th Cir. May 18, 2020), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments.

Accordingly, we affirm the district court's denial of Appellants' motion to suppress the evidence from the hotel room search.

IV.

For the foregoing reasons, the decision of the district court is

*AFFIRMED*.